NOT FOR PUBLICATION (Docket No. 10)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

_____
:
STEVEN ROBERTS, :
:
:
Plaintiff, : Civil No. 6-88 (RBK)
:
v. : **OPINION**
:
RYAN GILLIKIN, et al. :
:
:
Defendants. :
_____ :

**KUGLER**, United States District Judge:

Before the Court is a motion by Defendants Officer Ryan Gillikin,[1] Paulsboro Chief of Police Ridinger, and the Borough of Paulsboro, (collectively "Defendants") for summary judgment against Plaintiff Steve Roberts ("Plaintiff"). For the reasons provided below, the Court grants in part and denies in part Defendants' motion for summary judgment.

I. Background

On February 4, 2005, Officer Gillikin, a police officer with the Borough of Paulsboro Police Department, conducted a traffic stop of a vehicle driven by Plaintiff because the vehicle had a

---

[1] The Court notes that Defendant Gillikin's name is referred to as both "Gillikin" and "Gilliken" in Defendants' moving papers. For the sake of consistency, the Court adopts the former spelling in this opinion.

cracked windshield and an expired registration sticker. When Plaintiff lowered the car window at Officer Gillikin's request, Officer Gillikin detected the smell of marijuana emanating from inside the vehicle. After Plaintiff failed to produce a driver's license, Officer Gillikin asked the two passengers in Plaintiff's vehicle for identification, which they each produced. Officer Gillikin then asked Plaintiff to step out of the vehicle. When asked why the car smelled of marijuana, Plaintiff allegedly admitted to smoking marijuana on occasion. Officer Gillikin asked Plaintiff if he possessed any controlled dangerous substances ("CDS"). Plaintiff alleges that he initially denied possession of a CDS, but ultimately voluntarily surrendered a bag of marijuana in one of his pockets after Officer Gillikin reached into one of Plaintiff's pockets.[2] Officer Gillikin then arrested Plaintiff for possession of a CDS.[3]

Upon arrival at the police station, but prior to his placement in a holding cell, Plaintiff alleges that Officer Gillikin subjected Plaintiff to a "strip search" and a "body cavity search." Specifically, Plaintiff alleges that Officer Gillikin instructed Plaintiff to remove all of his clothing,

---

[2] Officer Gillikin alleges that he discovered the "nickel bag" of marijuana only after a pat-down search of Plaintiff.

[3] At some point during the vehicle stop and Plaintiff's arrest, two additional Paulsboro police officers arrived on the scene.

including his undergarments.  Plaintiff further alleges that Office Gillikin told Plaintiff to "bend over," revealing his anal cavity, penis and scrotal area. Finally, Plaintiff alleges that Officer Gillikin told Plaintiff to "jiggle his balls."

Officer Gillikin disagrees with Plaintiff's account of the search, and states that Plaintiff remained in his underwear and undershirt, and that he merely told Plaintiff to "shake his boxers out." Officer Gillikin also states that he conducted the search because, in his previous experience, arrestees sometimes produce "one dime bag" at the time of the initial stop or arrest and hide remaining bags in their clothing or on their bodies. Officer Gillikin states that it was necessary to search Plaintiff to ensure that he was charged with the appropriate offense. Defendant was ultimately charged with a disorderly persons offense, pursuant to N.J.S.A. §§ 2C:35-10(4) and 2C:36-2.

Plaintiff filed a complaint in United States District Court for the District of New Jersey on January 9, 2006. On November 28, 2006, Officer Gillikin, Chief of Police of Paulsboro, and the Borough of Paulsboro moved for summary judgment.  Plaintiff opposes this motion.

## II.  Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

3

any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the suit under the applicable law. Id. In deciding whether there is a disputed issue of material fact, a court must view the facts and all reasonable inferences in a light most favorable to the nonmoving party. Id. at 250.

The moving party always "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). However, where the nonmoving party bears the burden of persuasion at trial, "the burden on the moving party may be discharged by 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." Id. at 325. The non-moving party "may not rest upon the mere allegations or denials of" its pleadings and must present more than just "bare assertions, conclusory allegations or suspicions" to establish

4

the existence of a genuine issue of material of fact.  Fed. R. Civ. P. 56(e).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.  <u>Anderson</u>, 477 U.S. at 249.  Credibility determinations are the province of the factfinder, not the district court.  <u>BMW, Inc. v. BMW of N. Am., Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992).

**III. Analysis**

    A.   <u>Illegal Search - Federal Law</u>

Defendants move for summary judgment as to the claims that Defendants violated Plaintiff's federal constitutional rights when Officer Gillikin subjected Plaintiff to the alleged strip and body cavity search based on the doctrine of qualified immunity.

Qualified immunity protects police officers, like other governmental officials, from liability for civil damages where their conduct in performing a discretionary function "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Orsatti v. New Jersey State Police</u>, 71 F.3d 480, 483 (3d Cir. 1995) (citing <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)). Qualified immunity provides government officials room for mistakes in

5

judgment and protects "all but the plainly incompetent or those who knowingly violate the law." Orsatti, 71 F.3d at 484. The rationale behind qualified immunity for police officers is to permit officers to perform their duties "without the fear of constantly defending themselves against insubstantial claims for damages" and to allow the public to recover damages where officers "unreasonably invade or violate individual rights under the Constitution and the laws of the United States." Id. at 483 (citing Anderson v. Creighton, 483 U.S. 635, 639 (1987)).

    *1.   Strip Search*

Plaintiff argues that the alleged strip search he underwent at the Paulsboro Police Station was illegal under Article IV of the United States Constitution, applicable to the states under the Fourteenth Amendment. Plaintiff seeks redress pursuant to 42 U.S.C. § 1983.

When deciding whether a strip search is constitutional under the Fourth and Fourteenth Amendments to the United States Constitution, courts use the standard of "reasonable suspicion." See, e.g., Martino v. County of Camden, No. 04-5300, 2005 WL 1793718, at *12 (D.N.J. July 26, 2005) (citing Elk v. Towson, 839 F. Supp. 1047 (S.D.N.Y. 1993) (finding reasonable suspicion after police saw and smelled marijuana on defendant)). In addition, in Davis v. Camden, 657 F. Supp. 396 (D.N.J. 1987), the court held that "for a strip search to be constitutional there must be

6

reasonable suspicion that the arrestee is concealing weapons or contraband; such suspicion could arise either from the specific circumstances of the arrestee or the arrest, or from the nature of the offense charged." DiLoreto v. Borough of Oaklyn, 744 F. Supp. 610, 620 (D.N.J. 1990) (citing Davis, 657 F. Supp. at 400-01).

Under this analysis, the Court concludes that the record reflects that Officer Gillikin had reasonable suspicion to conduct a strip search of Plaintiff at the police station. Officer Gillikin smelled marijuana in the vehicle when Plaintiff rolled down the window of his vehicle; Plaintiff admitted to smoking marijuana occasionally; Plaintiff had a "nickel bag" of marijuana on his person, leading to his arrest for possession of a CDS; and finally, in Officer Gillikin's professional experience, it is common for individuals who possess CDS to produce only small quantities to authorities while concealing other CDS's on their person or in their clothing. Even drawing every inference in Plaintiff's favor, as required by the summary judgment standard, there is no genuine issue of material fact as to whether Officer Gillikin had reasonable suspicion to justify a strip search upon Plaintiff's arrest. Therefore, there was no violation under the Fourth and Fourteenth Amendments to the Federal Constitution. As a result, the Court finds that Officer Gillikin is entitled to qualified immunity and the Court grants

summary judgment for Defendants as to the portion of Count One of the complaint that alleges that the strip search violated federal law.

### 2. Body Cavity Search

As with strip searches, federal courts determine whether officers had "reasonable suspicion" to believe that an arrestee concealed weapons or contraband so as to support a body cavity search. See, e.g., Bell v. Wolfish, 441 U.S. 520, 558-60 (1979) (applying a reasonableness test when determining whether body cavity searches of pretrial detainees and convicted prisoners violate the Fourth Amendment). Accordingly, courts in this district use the same standard of "reasonable suspicion" to evaluate both strip and body cavity searches for arrestees. See O'Brien v. Borough of Woodbury Heights, 679 F. Supp. 429, 433-34 (D.N.J. 1988). This Court therefore applies the reasonableness test as set forth above in the strip search context, and finds that there is no genuine issue of material fact as to whether Defendants violated Plaintiff's Fourth and Fourteenth Amendment rights when Officer Gillikin allegedly subjected Plaintiff to a visual body cavity search at the Paulsboro police station. Because Officer Gillikin did not violate a clearly established constitutional right when he conducted the alleged strip and body cavity search, the Court finds he is entitled to qualified immunity and the Court grants Defendants' motion for summary

judgment as to the portion of Plaintiff's complaint that alleges violation of his federal constitutional rights.

### B. Illegal Search - New Jersey Law

#### 1. *Strip Search*

Plaintiff further alleges that the strip search he underwent at the Paulsboro Police Station was illegal under Article 1, Paragraph 7 of the New Jersey Constitution.

In New Jersey, strip searches are regulated by constitutional limitations, as well as by statute, which "provides greater protection than [that] afforded by the Fourth Amendment." State v. Harris, 894 A.2d 8, 20 (N.J. Super. App. Div. 2006). New Jersey law defines a "strip search" as the "removal or rearrangement of clothing and the visual inspection of the person's undergarments, buttocks, anus, genitals, or breasts. . . ." N.J.S.A. § 2A:161A-3(a). New Jersey further provides that for persons "detained or arrested for commission of an offense other than a crime," a strip search is only permitted when

> a. The search is authorized by a warrant or consent;
>
> b. The search is based on probable cause that a weapon, controlled dangerous substance, as defined by the "Comprehensive Drug Reform Act of 1987," . . . or evidence of a crime will be found and a recognized exception to the warrant requirement exists; or
>
> c. The person is lawfully confined in a municipal detention facility or an adult county correctional facility and the search is based on a reasonable suspicion that a weapon, controlled dangerous substance,

>as defined by the "Comprehensive Drug Reform Act of 1987," . . . or contraband, as defined by the Department of Corrections, will be found, and the search is authorized pursuant to regulations promulgated by the Commissioner of the Department of Corrections.

N.J.S.A. 2A:161A-1 (emphasis added).

In State v. Harris, the New Jersey Superior Court, Appellate Division, held that the police violated the defendant's state constitutional right to be free from an illegal search. 894 A.2d at 20-22. In Harris, the police approached the defendant in a dark alleyway in a high crime area, after the police observed defendant counting a large amount of cash. Id. at 19. The police observed the defendant, and a companion, attempting to evade detection once the defendant saw the police officers approach. Id. Before engaging with the defendant, the police observed a "blunt," used to smoke marijuana, at the defendant's feet. Id. The defendant was uncharacteristically friendly and cooperative, and had difficulty speaking. Id. at 20. The police suspected he concealed something in his mouth. Id. The police ordered the defendant to spit out the object in his mouth, and the defendant complied. Id. The object was a bag containing marijuana. Id. The police arrested defendant for marijuana possession, a disorderly persons offense. Id. At the police station, the police conducted a strip search, and found a small folded pocket knife, $1,300 in cash, and a bag of cocaine. Id. The Harris court ruled that the trial court erred in denying the

10

defendant's motion to suppress evidence of the cocaine, because the police did not have a "reasonable belief that additional drugs were hidden in other body parts to justify the intrusive invasion of a strip search," thereby violating the defendant's right to be free of an illegal search under New Jersey law. Id. The court held that because the defendant was not arrested for a crime, but rather a disorderly persons offense, the search must be supported by "both probable cause and a 'recognized exception to the warrant requirement.'" Id. (quoting N.J.S.A. § 2A:161A-1(b). After examining the "nature of the offense, the arrestee's appearance and conduct, and the prior arrest record," the court found the search was not supported by probable cause. Id. at 20-21 (emphasis added). The court was not persuaded that the defendant's possession of marijuana, the fact that the defendant concealed the drugs in his mouth, nor the defendant's prior history gave rise to probable cause to justify the strip search. Id. at 21. Therefore, the court found that the strip search violated Harris's rights under the New Jersey Constitution. Id.

In this case, Officer Gillikin arrested Plaintiff for the disorderly persons offense of marijuana possession. Therefore, as in Harris, the search was prohibited unless supported by both probable cause and "a recognized exception to the warrant requirement." N.J.S.A. 2A:161A-1b. According to the court's analysis in Harris, the Court finds that, under New Jersey law,

11

there is a genuine issue of material fact as to whether Officer Gillikin lacked probable cause to conduct a strip search. The facts of this case, including Plaintiff's possession of marijuana, his initial reluctance to produce the marijuana, the fact that Plaintiff admitted smoking marijuana, and the smell emanating from the vehicle during the traffic stop, are substantially less supportive of probable cause than those in <u>Harris</u>. Therefore, the Court denies Defendants' motion for summary judgment as to the portion of Count One of Plaintiff's complaint that alleges violation of Plaintiff's rights to be free from an illegal search under the New Jersey Constitution.

        *2.   Body Cavity Search*

New Jersey law defines a "body cavity search" as the "visual inspection or manual search of a person's anus or vaginal cavity." N.J.S.A. § 2A:161A-3. Because this Court concludes that a body cavity search is as invasive as a strip search, and because this Court concludes that there is a genuine issue of material fact as to whether Officer Gillikin conducted the strip search in violation of the New Jersey Constitution, this Court likewise denies summary judgment as to Plaintiff's allegations that Defendants violated his state constitutional rights when Officer Gillikin conducted the alleged body cavity search. In so doing, this Court does not decide whether Officer Gillikin actually subjected Plaintiff to a body cavity search, as there is

a disputed question of material fact as to whether a body cavity search occurred.

### C. Borough of Paulsboro's Liability

In the complaint, Plaintiff appears to allege that the Borough of Paulsboro had a policy or custom that permitted or resulted in federal constitutional deprivations.  As a result, Plaintiff seeks relief from the Borough of Paulsboro, pursuant to 42 U.S.C. § 1983.  Monell v. New York City Dept. of Social Serv., 436 U.S. 658 (1978).  However, a Monell claim requires a deprivation of federal constitutional rights.  As discussed in section III.A., supra, this Court grants Defendants' motion for summary judgment on the portions of the complaint that allege violation of federal law as a result of the strip and body cavity searches.  Because there is no longer a federal issue, this Court grants summary judgment to the Borough of Paulsboro on the Monell claim.[4]

### D. Assault and Battery

Plaintiff alleges that Officer Gillikin's strip and body cavity searches amount to assault and battery under New Jersey law. Defendants move to dismiss these claims, arguing that the New Jersey Tort Claims Act ("TCA"), N.J.S.A. § 59:1-1, et seq.,

---

[4] It is particularly troublesome that, in defining the scope of the federal constitutional right to be free of illegal search and seizure, Plaintiff's counsel repeatedly references New Jersey statutes and cases.

13

shields Defendants from liability. Specifically, Defendants argue that N.J.S.A. § 59:3-3, which states "A public employee is not liable if he acts in good faith in the execution or enforcement of any law," exempts Officer Gillikin from liability.

The TCA immunizes public officials in certain circumstances. Section 59:3-2 of the TCA provides, in relevant part, that "a public employee is not liable for an injury resulting from the exercise of judgment or discretion vested in him." N.J.S.A. § 59:3-2(a). The TCA further provides that "a public employee is not liable if he acts in good faith in the execution or enforcement of any law . . . ." N.J.S.A. § 59:3-3.

New Jersey courts define "good faith" in the context of N.J.S.A. § 59:3-3 to mean objectively reasonable conduct. Hayes v. Mercer County, 526 A.2d 737, 741 (N.J. Super. App. Div. 1987). In many cases, the question of "good faith" presents a question of fact to be resolved at a hearing. Fielder v. Stonack, 661 A.2d 231, 246 (N.J. 1995).  However, summary judgment under N.J.S.A. § 59:3-3 is appropriate if public employees can establish that they acted in an objectively reasonable manner or that they performed their duties with subjective good faith. Hayes v. Mercer County, 526 A.2d 737, 741 (N.J. Super. App. Div. 1987).

The Court finds that Plaintiff alleged sufficient facts with regard to the assault and battery claim, namely that Officer Gillikin acted intentionally and recklessly in undertaking the

14

strip search, to prevent the Court from concluding that Officer Gillikin performed his duties in an objectively reasonable manner.  This finding does not preclude Officer Gillikin from presenting evidence at trial that he acted with subjective good faith so as to receive immunity under the TCA.  This conclusion merely states that Plaintiff alleged and demonstrated sufficient facts to defeat Defendants' motion for summary judgment as to this issue.[5]

### E.   TCA Claim Limitation

Defendants move for summary judgment as to Plaintiff's state law claims for damages for pain and suffering. Specifically, Defendants state that the TCA precludes damages for non-economic injuries, with limited exceptions.

Section 59:9-2 of the TCA provides

> No damages shall be awarded against a public entity or

---

[5]   Likewise, Plaintiff alleges that the "public entity" (i.e., the Borough of Paulsboro) is also liable for the alleged assault and battery.  The TCA provides that "a public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of employment in the same manner and to the same extent as a private individual under like circumstances."  N.J.S.A. § 59:2-2.  Because the Court finds there is a genuine issue of material fact as to whether Officer Gillikin acted in good faith, the Court also denies summary judgment to the Borough of Paulsboro with regard to Plaintiff's assault and battery claims.
    In addition, Plaintiff's assault and battery claims arise from the same series of events as Plaintiff's state constitutional claims.  Therefore, the Court also holds that Officer Gillikin and the Borough of Paulsboro are not entitled to summary judgment under the "good faith" immunity provision in the TCA as to Plaintiff's claims of a state constitutional violation.

>public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600.00.

N.J.S.A. § 59:9-2.

Plaintiff adduced no evidence of a "permanent loss of bodily function, permanent disfigurement, or dismemberment" in his opposition papers, despite notice that Defendants moved for summary judgment as to his pain and suffering claims. Moreover, Plaintiff presented no evidence of medical expenses. Therefore, this Court grants Defendants' motion for summary judgment as to Plaintiff's claim for damages for pain and suffering.

## IV. CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion for summary judgment as to all the federal constitutional claims asserted against all Defendants. The Court also grants Defendants' motion for summary judgment on Plaintiff's claims of pain and suffering, pursuant to the TCA. The Court denies Defendants' motion for summary judgment as to Plaintiff's state constitutional claims and Plaintiff's claims of assault and battery.

Dated: <u>7/13/2007</u>        <u>s/Robert B. Kugler</u>
                             ROBERT B. KUGLER
                             United States District Judge